UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  7 12 10
```

-------------------------------------X

FEDERAL INSURANCE COMPANY,

                  Plaintiff,

     -against-

DISTINGUISHED PROPERTIES UMBRELLA
MANAGERS INC., a Delaware
Corporation or Group, DISTINGUISHED
PROGRAMS INSURANCE BROKERAGE LLC,
a New York Corporation, and THE
DISTINGUISHED PROGRAMS GROUP, LLC,
a Delaware Corporation,

                Defendants.

-------------------------------------X

09 Civ. 8686

AMENDED
OPINION

A P P E A R A N C E S:

       Attorneys for Plaintiff

       COZEN O'CONNOR
       45 Broadway
       New York, NY  10006
       By:  John Galligan, Esq.
            Daniel Theveny, Esq.

       Attorneys for Defendants

       KAUFMAN DOLOWICH VOLUCK & GONZO LLP
       135 Crossways Park Drive, Suite 201
       Woodbury, NY  11797
       By:  Janene Marasciullo, Esq.
            Jennifer E. Sherven, Esq.

**Sweet, D.J.**

Defendants Distinguished Properties Umbrella Managers, Inc. ("Distinguished Umbrella"), Distinguished Programs Insurance Brokerage LLC ("Distinguished Brokerage"), and the Distinguished Programs Group, LLC ("Distinguished Group") (collectively the "Defendants") have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Federal Insurance Company ("Chubb"). Upon the facts and conclusions set forth below, the motion is granted, and the Complaint dismissed with prejudice and costs.

**Prior Proceedings**

Chubb filed its Complaint on October 14, 2009, alleging negligence (Count I), negligent misrepresentation (Count II), and breach of an implied-in-fact contract (Count III).

The instant motion was heard and marked fully submitted on March 17, 2010.

1

**The Facts**

On October 27, 2003, Chubb issued a Chubb
Commercial Umbrella insurance policy, number 7949-86-82,
(the "Insurance Policy") to Distinguished Umbrella, a
federal risk purchasing group. The Insurance Policy
identified Distinguished Brokerage as the producer and
Distinguished Umbrella and members of the federal risk
purchasing group as the insureds. (Def. Ex. D.) The
Insurance Policy was in effect from August 30, 2003 until
August 30, 2005. (Def. Ex. A.)

An endorsement to the Insurance Policy, "Named
Insured," stated that the named insured included
"Distinguished Properties Umbrella Managers, Inc. and its
members." (Def. Ex. D.) Another endorsement to the
Insurance Policy, "Inception Named Insured & Covered
Locations," provided that

[i]t is hereby agreed that those entities or
group of related entities designated as members
of this risk purchasing group on the individual
member's Certificate of Coverage and identified
on the initial bordereau dated August 30, 2003
submitted to the company by the broker
Distinguished Programs Insurance Brokerage LLC
are included as insureds under this policy.

2

(Def. Ex. D.) The individual member's certificate of
coverage reflected the specific term of the individual
member's coverage period. (Def. Ex. D.)

The Insurance Policy required that Distinguished
Umbrella "must see to it" that Chubb and Distinguished
Umbrella's underlying insurers "are notified as soon as
reasonably possible of any occurrence which may result in a
claim if the claim may involve this policy or any
underlying insurance" and "receive notice of the claim or
suit as soon as reasonably possible." (Def. Ex. D.)

The Insurance Policy provided that Chubb had "the
right and the duty to assume control of the investigation,
settlement or defense of any claim or suit against the
insured for damages covered by this policy, even if the
allegations of the claim or suit are groundless, false or
fraudulent." (Def. Ex. D.)

One entity insured under the Insurance Policy was
65 Ocean Avenue Associates, LLC (now known as The Grove,
LLC), which was located at 65 Ocean Avenue, Brooklyn, New
York (the "65 Ocean Property") and another location.
(Compl. ¶ 16; Def. Ex. A.) On December 17, 2004,

3

Distinguished Group notified Chubb in writing that the 65
Ocean Property was deleted from coverage under the
Insurance Policy.  (Compl. ¶¶ 16, 18; Def. Ex. A.)

On December 24, 2004, an employee of an elevator
service company suffered significant personal injury while
performing work at the 65 Ocean Property.  (Compl. ¶ 17.)
In April 2005, the employee filed a lawsuit entitled
Todorovic v. 65 Avenue Associates et al., N.Y. Sup. Ct.,
Bronx County, Index. No. 14179-2005 (the "Todorovic
lawsuit").  (Compl. ¶ 17; Def. Ex. B.)

Distinguished Group notified Chubb of the
Todorovic lawsuit by facsimile, including: (1) a First
Notice of Umbrella Claim (the "Notice"); (2) a copy of the
Todorovic lawsuit summons and complaint; (3) a certificate
of insurance issued on February 18, 2004; and (4) a copy of
the bordereau.  (Compl. ¶¶ 18-19; Def. Ex. B.)  The Notice
identified the insured and the plaintiff, provided the
location and a brief description of the incident, and
contained a note asking Chubb to provide a claim number and
identify the adjuster.  (Compl. ¶ 18; Def. Ex. B.)

4

There were no further communications between
Chubb and Defendants regarding the Todorovic lawsuit.
(Compl. ¶¶ 18-21.)  In September 2007, Chubb paid
$1,125,000 to settle the Todorovic lawsuit.  (Compl. ¶ 21.)

## **The 12(b)(6) Standard**

On a motion to dismiss pursuant to Rule 12, all
factual allegations in the complaint are accepted as true,
and all inferences are drawn in favor of the pleader.
Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.
1993).  The issue "is not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to
offer evidence to support the claims."  Villager Pond, Inc.
v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting
Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that
is plausible on its face.'"  Ashcroft v. Iqbal, -- U.S. --,
129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  Though the court must
accept the factual allegations of a complaint as true, it

5

is "not bound to accept as true a legal conclusion couched

as a factual allegation." Iqbal, 129 S. Ct. at 1949

(quoting Twombly, 550 U.S. at 555). Plaintiffs must allege

sufficient facts to "nudge[] their claims across the line

from conceivable to plausible." Twombly, 550 U.S. at 570.

When deciding a 12(b)(6) motion, a court may

consider the complaint's factual allegations and documents

attached to, incorporated by reference in, or otherwise

integral to the complaint. Roth v. Jennings, 489 F.3d 499,

509 (2d Cir. 2007). Likewise, a reviewing court may

consider any matter "of which judicial notice may be

taken." Hoffenberg v. Hoffman & Pollok, 288 F. Supp. 2d

527, 534 (S.D.N.Y. 2003) (citation omitted).

## The Negligence Counts Are Barred by the Statute of Limitations

Pursuant to the Erie doctrine in this diversity

case, the Court must look to state law to determine the

substantive rights and obligations of the parties and the

applicable statute of limitations. Stuart v. Am. Cyanamid

Co., 158 F.3d 622, 626 (2d Cir. 1998) ("Where jurisdiction

rests upon diversity of citizenship, a federal court

sitting in New York must apply the New York choice-of-law

rules and statutes of limitations."); see Hoffenberg, 288

F. Supp. 2d at 535 (citing Erie R.R. Co. v. Tompkins, 304

U.S. 64, 86-87 (1938) and Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487, 496-497 (1941)); Guaranty Trust Co. v.

York, 326 U.S. 99, 110, 112 (1945) (a federal court sitting

in diversity must look to state law to determine the

applicable limitations period). New York substantive law

governs this action, because Defendants' principal place of

business is in New York and all relevant events occurred in

New York.  (Compl. ¶¶ 2-4, 9-10.)


New York applies a three-year statute of

limitations to claims sounding in tort, as is the case for

Counts I (negligence) and II (negligent misrepresentation).

See N.Y. C.P.L.R. § 214(4); Mauro v. Niemann Agency, Inc.,

756 N.Y.S.2d 611, 612 (App. Div. 2003).[1]


As a general rule, "[a] tort claim accrues as

soon as the claim becomes enforceable, i.e., when all

elements of the tort can be truthfully alleged in a

---

[1]      Defendants argue that a three-year statute of limitations applies
to Plaintiff's negligent misrepresentation claim because it "involves
injury to property." Lee v. Kim, No. 93 CIV. 8280, 1994 WL 586436, at
*7 (S.D.N.Y. Oct. 25, 1994). However, under New York law, a six-year
statute of limitations applies to negligent misrepresentation claims
based on fraud.  See id. Here, Plaintiff has conceded that the three-
year statute of limitations applies.  (Pl. Br. 7.)

complaint." IDT Corp. v. Morgan Stanley Dean Witter & Co.,
12 N.Y.3d 132, 140 (2009) (quotations and citations
omitted). Thus, "[t]o determine timeliness, [a court]
consider[s] whether plaintiff's complaint must, as a matter
of law, be read to allege damages suffered so early as to
render the claim time-barred." Id. (citations omitted).

The Complaint alleges that "Defendants
affirmatively and expressly represented to Plaintiff that
the personal injury claim at the 65 Ocean Avenue property
which was the subject of the Todorovic lawsuit was covered
under Plaintiff's policy of insurance." (Compl. ¶ 18.)
The Complaint further alleges that "Defendants breached the
duty they owed to [Chubb] by failing to properly
investigate and determine coverage . . . and in wrongfully
reporting this personal injury claim to [Chubb] and
advising [Chubb] that [there] was coverage for same."
(Compl. ¶ 28.) Finally, the Complaint alleges that
Defendants made a negligent misrepresentation "by making a
false representation about coverage for this personal
injury claim when [they] inaccurately and incorrectly
reported this personal injury claim to [Chubb]." (Compl.
¶ 33.) The Complaint alleges that this purported wrongful
act occurred on April 20, 2005. (Compl. ¶¶ 18-19.) The

8

Notice appended to the Complaint establishes that this
allegedly wrongful communication occurred on April 20,
2005.   (Compl. ¶¶ 18, 19; Pl. Ex. B.)

Chubb also alleged that "the incident and
resulting damage which forms the basis of this lawsuit
occurred in September 2007," when, in exercise of its
contractual responsibility to investigate and settle
claims, Chubb "wrongfully paid $1,125,000.00 in settlement
of this personal injury claim."   (Compl. ¶¶ 5, 21.)

In the IDT Corp. case, IDT sued Morgan Stanley,
its former investment banker, for breach of fiduciary duty
because Morgan Stanley allegedly (1) disclosed IDT's
confidential business information to a third party,
Telefonica, causing Telefonica to renege on a Memorandum of
Understanding ("MOU") and (2) provided incorrect
information during an arbitration that IDT commenced in May
2001.   IDT Corp., 12 N.Y.3d at 137-39.   The court held that
IDT suffered loss "as a result of Morgan Stanley's alleged
breach of fiduciary duty, after Telefonica refused to
comply with the MOU.   The exact date of the injury is not
alleged but must have been before May 25, 2001, when IDT
commenced the arbitration against Telefonica."   Id. at 140.

9

Here, the Complaint establishes that Chubb assumed the
defense of the Todorovic lawsuit when it received the
Notice on April 20, 2005. According to Defendants, that is
the date on which Chubb sustained damages and therefore the
date on which the statute of limitations began to run.

Relying on its reading of the IDT Corp. case,
Chubb has contended that its negligence claims did not
accrue until Chubb settled the Todorovic lawsuit in
September 2007. However, as Chubb concedes, the Court of
Appeals "stated the injury 'must have accrued before May
25, 2001, when IDT commenced the arbitration against
Telefonica.'" (Pl. Br. 10.) Thus, the injury occurs not
when damages are fixed by a settlement, but rather when a
party changes position to its detriment, and thereby
sustains an injury that causes it to suffer loss. In this
case, Chubb assumed the duty to investigate, defend, and
resolve the Todorovic lawsuit on April 20, 2005.[2] (Compl.
¶¶ 5, 18, 19, 21.)

Lavandier v. Landmark Ins. Co., 810 N.Y.S.2d 45
(App. Div. 2006), upon which Chubb relies, involved a

---

[2]     Plaintiff concedes that it could have alleged damages arising
from injuries that accrued before settlement. (See Pl. Br. 11 (citing
"further injuries from which damage ensued until September 2007").)

purportedly negligent failure by a broker to report a claim
to an insurance carrier. The court held that a cause of
action accrues not when damages are calculated, but rather
at the time of injury, which was when the insurance carrier
disclaimed coverage. Id. at 46.

Chubb's assertion of the continuing tort doctrine
(Pl. Br. 10) is similarly unavailing, because the case does
not involve "continuous or repeated injuries." Mix v.
Delaware & Hudson Ry. Co., 345 F.3d 82, 88 (2d Cir. 2003).
The cases cited by Chubb involve multiple negligent acts
resulting in separate and distinct injuries. See
Kaymakcian v. Bd. of Managers of Charles House Condo., 854
N.Y.S.2d 52, 53 (App. Div. 2008) (continuing failure to
repair a terrace); Beller v. William Penn Life Ins. Co.,
778 N.Y.S.2d 82, 85 (App. Div. 2004) (multiple, distinct
breaches of contract); 1050 Tenants Corp. v. Lapidus, 735
N.Y.S.2d 47, 49 (App. Div. 2001) (repeated damage to
property from a continuously leaking air conditioning
unit); Dabb v. NYNEX Corp., 691 N.Y.S.2d 840, 841-42 (App.
Div. 1999) (continuous improper delivery of electricity);
Zoller v. Niagara Mohawk Power Corp., 525 N.Y.S.2d 364, 367
(App. Div. 1988) (same).

11

In the Complaint, however, Chubb has alleged only
one negligent act, the delivery of the Notice of the
Todorovic lawsuit on April 20, 2005, and one injury,
namely, Chubb's accepting responsibility for the
investigation, defense, and resolution of the Todorovic
lawsuit. (Compl. ¶¶ 5, 18, 21.) The negligent act and
injury both occurred on April 20, 2005.

Under the authorities discussed above, Counts I
and II accrued on April 20, 2005. As the Complaint was not
filed within three years, Counts I and II are time-barred.

## The Complaint Failed to Establish a Breach of Duty under Count I

The Complaint alleges that Distinguished Umbrella
timely notified Chubb that the 65 Ocean Property was no
longer covered under the Insurance Policy and that
Distinguished Group notified Chubb about the Todorovic
lawsuit when it received notice of the lawsuit in April
2005. (Compl. ¶¶ 16, 18; Def. Exs. A, B.)

Under New York law, a negligence claim requires
"(1) the existence of a duty on defendant's part as to

12

plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (citing Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333 (1981)). "The existence of a duty is thus a sine qua non of a negligence claim: 'In the absence of a duty, as a matter of law, no liability can ensue.'" Id. (quoting McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997)); see also Strauss v. Belle Realty Co., 65 N.Y.2d 399, 402 (1985) ("A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff."). "[T]he existence and scope of a duty is a question of law." Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138 (2002).

It is well established under New York law that "insurance brokers act as agents on behalf of an insured and not the insurer." Evvtex Co. v. Hartley Cooper Assocs. Ltd., 911 F. Supp. 732, 738 (S.D.N.Y. 1996); see Bohlinger v. Zanger, 306 N.Y. 228, 231-32 (1954) (an insurance broker, when acting for an insured, is deemed the agent of the insured). Accordingly, the common law does not impose a duty of care upon Defendants with respect to Chubb.

13

Chubb has contended that Defendants had a duty to make coverage determinations that arose from the parties' "past relationship and course of dealing" and Defendants' role as a federal risk purchasing group.  (Pl. Br. 12-14.) In addition, Chubb argues that Defendants owed it a common law duty of disclosure.  (Pl. Br. 13-15.)

Although a "voluntary assumption of an action imposes a duty of reasonable care in the performance of that action," Morgan Stanley & Co. v. JP Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 255-56 (S.D.N.Y. 2009), Chubb does not cite any facts in the Complaint that establish Defendants' voluntary assumption of a duty to make coverage determinations on Chubb's behalf and does not provide any facts from the "past relationship and course of dealing" that would give rise to such a duty.

The terms of the Insurance Policy establish that Defendants did not have a duty to make coverage determinations.  (See Def. Br. 11-12.)  The Insurance Policy required Distinguished Umbrella to notify Chubb "as soon as reasonably possible of any occurrence which may result in a claim if the claim may involve this policy or any underlying insurance."  (Def. Ex. D.)  This language

14

required notification if there were any possibility of
coverage under the Insurance Policy, regardless of merit.
As a practical matter, there is a limited time to respond
once a lawsuit has been initiated, and a coverage
determination may not be resolved by the time a response is
due.  The failure to report a claim against an insured to
the insurer may result in denial of coverage and thereby, a
breach of the duty to the insured.  Indeed, the very act
that Chubb claims constituted a breach of the duty of care,
reporting the Todorovic lawsuit to Chubb, also fulfilled an
express contractual obligation.  Accordingly, that act does
not constitute a breach of a duty of care.

        Chubb also argues that a federal risk purchasing
group is required to make coverage decisions for an
insurance carrier, but cites no support for this argument.
Contrary to Chubb's contention, a risk purchasing group is
the insured and exists to benefit insureds, not insurers.
See 15 U.S.C. § 3901(a)(5); Ins. Co. of the State of Pa. v.
Corcoran, 850 F.2d 88, 89 (2d Cir. 1988) (risk purchasing
groups enable "persons or businesses with similar or
related liability exposure" to "purchas[e] liability
insurance on a group basis").  Therefore, Distinguished

15

Umbrella's status as a federal risk purchasing group did
not create a duty with respect to Chubb.

Chubb's contention that Defendants had a common
law "duty of disclosure" also fails because it relies upon
inapposite cases. See Cutler v. Hartford Life Ins. Co., 22
N.Y.2d 245, 254 (1996) (insured cannot obtain insurance
through fraudulent misrepresentations and then demand the
benefit of a policy procured through fraud); Merchants Ins.
Co. of N.H., Inc. v. Gage Agency, Inc., 801 N.Y.S.2d 859,
860-61 (App. Div. 2005) (insurance broker is agent of the
insured who owes no duty to an insurer in the absence of a
special relationship; finding no special relationship);
Travelers Ins. Co. v. Raulli & Sons, Inc., 802 N.Y.S.2d
823, 824-25 (App. Div. 2005) (same; finding existence of a
special relationship to be a triable question of fact).

Although Ins. Co. of N. Am. v. Whitlock, 214
N.Y.S. 697 (App. Div. 1926) and Hollis v. Charlew Constr.
Co., 754 N.Y.S.2d 756 (App. Div. 2003) held that brokers
were agents of the carrier, they are distinguishable.   In
Whitlock, the carrier executed a contract with the broker
that required the broker to write insurance, receive
premiums, adjust losses, and salvage goods, and the court

16

found that the broker had a duty to remit premiums and other payments to the carrier in accordance with the parties' agreement. 214 N.Y.S. at 702. In Hollis, the court refused to dismiss claims against a broker because the broker had exceeded the scope of its authority by adding an insured to a policy without approval from the carrier, which the broker knew to be required before an insured could be added. 754 N.Y.S.2d at 758.

In addition, the Complaint alleges that Chubb was injured when it "wrongfully paid $1,125,000.00" to settle the Todorovic lawsuit. The Insurance Policy allocates to Chubb "the right and the duty to assume control of the investigation, settlement or defense of any claim or suit against the insured for damages covered by this policy." (Def. Ex. D.) In Panepinto v. Allstate Insurance Co., 439 N.Y.S.2d 240 (Sup. Ct. 1981), the court found that a broker who acted as a salesperson for the carrier had a duty to supply correct information, but nonetheless found that the broker was not liable to the carrier because the carrier's loss was "due solely to its own failure to perform its responsibilities under the plan, specifically its failure to investigate the risk promptly, and when it finally did investigate, its failure to conduct such investigation in a

17

manner free from negligence." Id. at 243.  Here, it was
Chubb, not Defendants, that caused whatever injury it
suffered by deciding to settle the Todorovic lawsuit.  As
the party with "the right and the duty" to investigate and
settle claims, Chubb is responsible for all settlements.

The Defendants had no duty to make coverage
determinations.  To the contrary, Chubb bore this
responsibility and is responsible for any injury caused by
an improper coverage determination.  Chubb has not
established that Defendants owed any duty of care to Chubb
or that Defendants caused any injury to Chubb.

Count I therefore fails to state a claim upon
which relief can be granted.

## The Complaint has Failed to Establish the
## Negligent Misrepresentations Alleged in Count II

Under New York law, a negligent misrepresentation
claim contains the following elements: "(1) the defendant
had a duty, as a result of a special relationship, to give
correct information; (2) the defendant made a false
representation that he or she should have known was

18

incorrect; (3) the information supplied in the
representation was known by the defendant to be desired by
the plaintiff for a serious purpose; (4) the plaintiff
intended to rely and act upon it; and (5) the plaintiff
reasonably relied on it to his or her detriment." Hydro
Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d
Cir. 2000). The "special relationship" element may be
satisfied where the defendant owes plaintiff a fiduciary
duty. See, e.g., Fab Indus., Inc. v. BNY Fin. Corp., 675
N.Y.S.2d 77, 78 (App. Div. 1998). Furthermore, a claim for
negligent misrepresentation may only be stated within a
breach of contract action if "the alleged misrepresentation
concerns a matter which is extraneous to the contract
itself." Alamo Contract Builders, Inc. v. CTF Hotel Co.,
663 N.Y.S.2d 42, 43 (App. Div. 1997); see also RKB Enters.,
Inc. v. Ernst & Young, 582 N.Y.S.2d 814, 816 (App. Div.
1992) (dismissing negligent misrepresentation claim because
it "merely parallel[ed] the breach of contract claim").

### Chubb has not Established a Special Relationship

It is well settled under New York law that a
fiduciary duty is generally not imposed upon an insurance
broker. See Murphy v. Kuhn, 90 N.Y.2d 266, 270 (1997).

19

Indeed, "[n]o special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable." Batas v. Prudential Ins. Co. of Am., 724 N.Y.S.2d 3, 7 (App. Div. 2001) (citations omitted); see also St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., 976 F. Supp. 198, 203 (S.D.N.Y. 1996) ("An ordinary relationship of broker to insurer does not, by itself, give rise to a 'special relationship'." (citation omitted)). The law thus precludes Chubb from establishing a fiduciary relationship with Defendants.

Chubb has contended that "Defendants owed a duty to Plaintiff as a result of their special relationship" (Compl. ¶ 32) and argues that "under certain circumstances" a broker can become an agent of the insurer. (Pl. Br. 19.) However, Chubb does not point to any facts or circumstances to support its contention that Defendants acted as fiduciaries with respect to Chubb or its argument that an agency relationship existed. Moreover, as discussed above, Defendants' status as a federal risk purchasing group means that they are the insured, and there is no special relationship between an insured and an insurer. See Batas,

724 N.Y.S.2d at 7; see also Corcoran, 850 F.2d at 89; 15 U.S.C. § 3901(a)(5).

Chubb has not supported its contention that a special relationship existed between the parties. The mere assertion of such a relationship is not sufficient to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949.

### Chubb has not Established Reasonable Reliance

Chubb argues that it reasonably relied upon the "certificate of insurance" included with Defendants' April 20, 2005 notification of the Todorovic lawsuit. However, given that Chubb was contractually obligated to investigate and resolve all claims, its purported reliance upon Defendants' April 20, 2005 notification of the Todorovic lawsuit is not reasonable. See Panepinto, 439 N.Y.S.2d at 243 (noting that an insurer could not rely upon information submitted by a broker because it had a duty to investigate, which it initially failed to discharge and then discharged negligently).

Chubb has not Alleged a Misrepresentation
Extraneous to the Contract_____ _____

          Count II of Chubb's Complaint alleges that

Defendants "inaccurately and incorrectly reported [the

Todorovic lawsuit] to [Chubb]."  (Compl. ¶ 33.)  Count III

alleges that Defendants "wrongfully report[ed] coverage for

the [Todorovic lawsuit] to [Chubb]."  (Compl. ¶ 40.)  The

allegation in Count II is a restatement of the same facts

in Count III, in slightly different language, and "merely

parallel[s] the breach of contract claim" asserted in Count

III.  RKB Enterprises, 582 N.Y.S.2d at 816.  Accordingly,

Chubb has failed to allege that the misrepresentation

"concerns a matter which is extraneous to the contract

itself."  Alamo Contract Builders, 663 N.Y.S.2d at 43.

          Count II therefore fails to state a claim upon

which relief can be granted.

**The Complaint has Failed to Establish the
Implied-in-Fact Contract Alleged in Count III**

          Count III alleges that the "course of dealings

between [Chubb] and the Defendants . . . constituted a

contract."  (Compl. ¶ 38.)  An implied-in-fact agreement is

22

"founded upon a meeting of minds, which, although not
embodied in an express contract, is inferred, as a fact,
from conduct of the parties showing, in the light of the
surrounding circumstances, their tacit understanding."
Hercules Inc. v. United States, 516 U.S. 417, 424 (1996).
Thus, "an implied-in-fact contract 'rests upon the conduct
of the parties and not their verbal or written words.'"
Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir.
2009) (quoting Parsa v. State, 64 N.Y.2d 143, 148 (1984)).

        Chubb argues that it "is not required to provide
detailed factual allegations concerning the existence of an
implied-in-fact contract," but acknowledges that it must
allege "conduct" that illustrates the parties' "tacit
understanding." (Pl. Br. 21.)  However, the Complaint
fails to assert any facts that illustrate the course of
dealings or the nature of the consideration or suggest that
a "meeting of the minds was indicated by some intelligible
conduct, act or sign." Baltimore & Ohio R.R. Co. v. United
States, 261 U.S. 592, 598 (1923).  As a result, Chubb has
not stated a "claim for relief that is plausible on its
face." Iqbal, 129 S.Ct. at 1949.

In addition, Chubb's claim for breach is precluded by the Insurance Policy, which is an express contract that covers the same subject as the alleged implied-in-fact contract. Leibowitz, 584 F.3d 487, 507 (2d Cir. 2009) ("[W]here there exists an express contract . . . an action outside that contract will not lie." (internal citations and quotations omitted)). In this claim, Chubb alleges that the parties' course of dealing created a contract that obligated Defendants to conduct "proper investigation and determination of coverage for claims, and proper and accurate reporting of claims," and that Defendants breached these obligations by reporting the Todorovic lawsuit to Chubb. (Compl. ¶¶ 39-41.) Pursuant to the Insurance Policy, Defendants were obligated to notify Chubb of any claims or potential claims involving the Insurance Policy and, in turn, Chubb was obligated to investigate, settle or defend such claims. (Def. Ex. D.) The Insurance Policy is thus an express contract that governed the parties' obligations with respect to the reporting and resolution of claims, the same subject matter at issue in the alleged implied-in-fact contract.

Chubb has contended that the implied contract "imposes duties independent of the express contract." (Pl.

24

Br. 22.)   Under the Insurance Policy, however, Defendants were contractually obligated to report claims that might be covered and Chubb was contractually obligated to investigate, defend, and settle claims.   The implied covenant of cooperation that Chubb seeks to impose, which would require Defendants to make coverage determinations, is not "independent" of the Insurance Policy, but rather is in direct conflict with the terms of the Insurance Policy. Chubb's contention fails because an "implied covenant will not be expanded to a point of conflict with the express terms of the bargained-for exchange."   Agency Dev., Inc. v. MedAmerica Ins. Co., 327 F. Supp. 2d 199, 204 (W.D.N.Y. 2004) (quotations omitted).

The contradiction between the terms of the Insurance Policy and the terms of the alleged implied-in-fact contract also demonstrates that the parties did not intend to form the implied contract.   R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984) ("What matters are the parties' expressed intentions.");   Estate of Argersinger, 564 N.Y.S.2d 214, 215 (App. Div. 1990) ("In order to infer the existence of a contract from the actions of the parties it must appear that they actually intended to form a contract." (citation omitted)).

25

For the foregoing reasons, Count III fails to state a claim upon which relief can be granted.

**Conclusion**

Based upon the facts and conclusions set forth above, Defendants' motion is granted and the Complaint is dismissed with prejudice and costs.

It is so ordered.

New York, NY
June     , 2010

ROBERT W. SWEET
U.S.D.J.

26